**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AIDAN MONAGHAN, | ) |
| | ) 2:07-cv-01614-RCJ-GWF |
| Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| | ) |
| Defendant. | ) |

This case arises out of Plaintiff's request for information from Defendant, pursuant to the Freedom of Information Act, in relation to the terrorist attacks of September 11, 2001. Before the Court is Plaintiff Aidan Monaghan's ("Monaghan") Motion for Summary Judgment (#41) and Defendant Federal Bureau of Investigation's ("FBI") Motion for Summary Judgment (#42). Monaghan is appearing pro se. The Court has considered the motions, briefs, pleadings, and oral argument on behalf of all parties and issues the following order. IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#41) is **DENIED** and Defendant's Motion for Summary Judgment (#42) is **GRANTED**.

**I.    BACKGROUND**

Monaghan is an individual residing in Las Vegas, Nevada. On September 12, 2007, the FBI received a letter from Monaghan, requesting "documentation pertaining to any formally and positively identified debris by the FBI, from all 4 civilian commercial aircraft used in the terrorist attacks of September 11, 2001[.]" (#34, Ex. A). Monaghan claimed he was entitled to such information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See id.*

On September 24, 2007, the FBI notified Monaghan by letter of the FBI's receipt of his request but explained that the requested information was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A), which authorizes the withholding of records or information compiled for law enforcement purposes. (#34, Ex. B). The FBI advised Monaghan of his right to file an administrative appeal to the U.S. Department of Justice, Office of Information and Privacy ("OIP"). *See id.* On October 25, 2007, OIP received an appeal letter from Monaghan. (#34, Ex. F). On November 26, 2007, OIP affirmed the FBI's refusal to grant Monaghan's request pursuant to 5 U.S.C. § 552(b)(7)(A). (#34, Ex. H).

On January 23, 2008, Monaghan filed the present lawsuit against the FBI, seeking access to the information that he was previously denied. (#11).[1] On February 1, 2008, Monaghan filed an amended complaint seeking the following information:

> agency records, concerning documentation revealing the process by which wreckage recovered by defendant, from the aircraft used during the terrorist attacks of September 11, 2001, was positively identified by defendant (with the aid of the National Transportation Safety Board), as belonging to the said aircraft, presumably through the use of unique serial number identifying information contained by the said aircraft's wreckage, that was collected by defendant and which defendant has improperly withheld from plaintiff. The data sought by plaintiff is the basis for the F.B.I.'s current public position, that the following 4 flights were those that were involved in the terrorist attacks on September 11, 2001: American Airlines flight 11, United Airlines flight 175, American Airlines flight 77 and United Airlines flight 93.

(#15 at ¶ 1).

---

[1] The FBI argues that the FBI is not a proper defendant under FOIA. (#43 at 6 n.2). The D.C. Circuit, which has the most interaction with FOIA, appears to be split on this question. *Compare Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 173 (D.C. Cir. 1998) (noting likelihood that "FBI is subject to the FOIA in its own name"); *McGehee v. Central Intelligence Agency*, 697 F.2d 1095, 1108 (D.C. Cir. 1983) (noting that the FBI "clearly [is] covered by the [Freedom of Information] Act") with *Trupel v. Drug Enforcement Admin.*, 2007 WL 1238867, *1 n.1 (D.D.C.) (holding that "FOIA provides a cause of action only against Executive Branch departments and regulatory agencies"); *Kidder v. F.B.I.*, 517 F.Supp.2d 17, 20 n.1 (D.D.C. 2007) (finding that DOJ was the proper party defendant and dismissing FBI as party to FOIA suit). The Ninth Circuit has not taken a position on this question. At least one Ninth Circuit district court has concluded that the FBI is a proper party. *See Rosenfeld v. U.S. Dept. of Justice*, No. C 07-03240, 2008 WL 3925633, at *1 n.1 (N.D. Cal. Aug. 22, 2008) (noting that the U.S. Supreme Court has heard a FOIA case in which the DOJ and FBI were considered proper defendants (citing *U.S. Dep't of Justice v. Landano*, 508 U.S. 165 (1993)). The FBI has not formally moved for the Court to dismiss or take any specific action in light of this issue, so the Court does not need to resolve this issue here.

Because the request in the amended complaint differed from Monaghan's original FOIA request, the FBI conducted a new search for documents that were potentially responsive to Monaghan's amended request. On March 12, 2008, the FBI informed Monaghan by letter that no responsive records were found. (#34, Ex. I). On October 3, 2008, Monaghan filed his Motion for Summary Judgment (#41). On October 16, 2008, the FBI filed its Motion for Summary Judgment (#42).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See id.* at 322–23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. *See id.*; *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994).

The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. *See Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991); *Anderson*, 477 U.S. at 249.

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally. *See Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003); *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) (same). However, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). *See also, Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 382 (9th Cir. 1997) ( "pro se litigants are not excused from following court rules").

**III.   THE GOVERNMENT'S SEARCH**

   **A.   Legal Standard**

Congress enacted FOIA "to open agency action to the light of public scrutiny." *United States Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989) (citations and quotations omitted). "Congress did so by requiring agencies to adhere to a general philosophy of full agency disclosure." *Id*. "Congress believed that this philosophy, put into practice would help ensure an informed citizenry, vital to the functioning of a democratic society." *Id*.

FOIA requires, that unless an exemption applies, "each agency, upon any request for records which (i) reasonably describes such records, and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). To prevail on summary judgment in a FOIA action, the government must establish that: 1) its search for responsive documents was reasonable; and 2) it has described with reasonable specificity the nature of the responsive documents and its justification for any non-disclosure. *See Zemansky v. United States Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985).

1  An agency has a duty to construe a FOIA request liberally. *See Truitt v. Dep't of State*, 897 F.2d 540, 544–45 (D.C. Cir. 1990) (citing Senate Report accompanying relevant provision of FOIA). The agency is under a duty to conduct a "reasonable" search for responsive records using methods that can be reasonably expected to produce the information requested to the extent they exist. *See* 5 U.S.C. § 552(a)(3)(C); *see also Citizens For Responsibility and Ethics in Washington v. Department of Interior*, 503 F. Supp. 2d 88 (D.D.C. 2007) ((stating that in response to a FOIA request, "an agency's duty is simply to conduct a reasonable search, and '[the agency] is not obliged to look beyond the four corners of the [FOIA] request for leads to the location of responsive documents.'") (citation omitted)). Although there is no requirement that an agency search every record system, *Truitt*, 897 F.2d at 542, or that a search be perfect, *Meeropol v. Meese*, 790 F.2d 942, 955–56 (D.C. Cir. 1986), the search must be conducted in good faith using methods that are likely to produce the information requested if it exists. *See Campbell v. United States Department of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998). An agency is not, however, "required to reorganize its files in response to a plaintiff's request in the form in which it was made." *Church of Scientology v. IRS*, 792 F.2d 146, 150–151 (D.C. Cir. 1986). It is sufficient that the searching person identified the employees who might have responsive documents, reviewed certain documents, and requested that agency employees forward responsive documents to her. *See* O'Reilly, Federal Information Disclosure, § 9:12, at 217 (2007 Suppl.).

As a general rule, FOIA determinations should be resolved on summary judgment. *See Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114 (9th Cir. 1988); O'Reilly, Federal Information Disclosure, § 8:21, at 173 (2007 Suppl.) (numerous citations); *Sakamoto v. U.S. Environmental Protection Agency*, 443 F.Supp.2d 1182, 1188 (N.D. Cal. 2006). Before it can obtain summary judgment in a FOIA case, however, an agency must show beyond a material doubt, and viewing the facts in the light most favorable to the requester, that it "has conducted a search reasonably calculated to uncover all relevant documents." *Steinberg v. United States Department of Justice*, 23

F.3d 548, 551 (D.C. Cir.1994) (quoting *Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). "[I]f no material facts are in dispute and if [the government agency] demonstrates that each document that falls within the class requested either has been produced or is wholly exempt from the Act's inspection requirements[,]" then summary judgment is appropriate. *Nevada v. U.S. Dept. of Energy*, 517 F.Supp.2d 1245 (D.Nev. 2007) (quoting *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (internal quotations and alterations omitted)).

The court may award summary judgment solely on the basis of information provided by the agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Agency affidavits or declarations must be "relatively detailed and non-conclusory." *SafeCard Services, Inc.,* 926 F.2d at 1200. Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id*. While the affidavits or declarations submitted by the agency need not "set forth with meticulous documentation the details of an epic search for the requested records," *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), they must "describe what records were searched, by whom, and through what processes," *Steinberg*, 23 F.3d at 552, and must show "that the search was reasonably calculated to uncover all relevant documents." *Weisberg,* 705 F.2d at 1350–51; *see Campbell,* 164 F.3d at 27. Conclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment. *See Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995).

**B.     The FBI's Motion for Summary Judgment**

Monaghan originally requested information regarding the debris or material recovered from

the four aircrafts that were involved in the 9/11 terrorist attacks. After exhausting his administrative remedies under FOIA, Monaghan filed the present lawsuit. However, after filing the original complaint, Monaghan filed an amended complaint, which modified the nature of the information that he was seeking from the FBI. In the amended complaint, Monaghan stated that he was seeking information regarding the process by which the four aircrafts were identified. (#15, ¶ 1).

The clarification of the nature of Monaghan's amended FOIA request is significant. Whereas the information that the FBI initially understood Monaghan to be requesting was, according to the FBI, exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A), the information that Monaghan is now seeking is not subject to a FOIA exemption. *See London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) ("[A] plaintiff waives all causes of action alleged in the original complaint which are not alleged in the amended complaint."); *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) (affirming the district court's holding that the pro se plaintiff's amended complaint superseded the original complaint and noting that pro se plaintiffs must comply with the rules of procedure). As a result, the FBI was able to conduct a search for the information requested by Monaghan in his amended complaint, which resulted in the FBI's conclusion that no responsive documents exist.

Monaghan argues that there is no distinction between the two inquiries. To the contrary, these inquiries seek different information. One inquiry asks the FBI to disclose information related to the actual materials and debris recovered from the four aircrafts, but the other inquiry asks the FBI to disclose information related to the process by which the government identified recovered debris as belonging to the four aircrafts. The D.C. Circuit recently stated that in responding to a FOIA request, "an agency's duty is simply to conduct a reasonable search, and '[the agency] is not obliged to look beyond the four corners of the [FOIA] request for leads to the location of responsive documents.'" *Citizens For Responsibility and Ethics in Washington,* 503 F. Supp. 2d at 102. Looking at the four corners of Monaghan's first request, the FBI would not have needed to divulge any information as to the process of identifying the four aircrafts and debris associated with the

aircrafts. *See id.* (concluding that "to the extent that the plaintiff feels that there remain certain responsive documents in the defendant's possession that other, broader searches might be likely to uncover, it is perfectly free to file an additional FOIA request specifically tailored to target those documents."). In short, Monaghan's requests are different, and the amended request superseded the former.

The D.C. Circuit has held that "once all requested records [have been] surrendered [by an agency in response to a FOIA request], federal courts have no further statutory duty to perform." *Citizens For Responsibility and Ethics in Washington,* 503 F. Supp. 2d at 102 (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)). The Ninth Circuit Court of Appeals has similarly recognized that "the production of all nonexempt material, 'however belatedly,' moots FOIA claims." *Papa v. U.S.*, 281 F.3d 1004, 1013 (9th Cir. 2002). Nonetheless, the government agency must certify "that all the records in existence that must be produced have been produced." *Id.* The government agency may not rely upon an affidavit that "merely state[s] that certain documents were produced," but should "detail the methods used to search for documents . . . ." *Id.*

In support of its Motion for Summary Judgment, the FBI relies upon the declaration of David M Hardy, the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at the FBI's Headquarters ("FBIHQ") in Washington, D.C. (#34, Declaration of David M. Hardy, ¶ 1) ("Hardy Declaration"). The Hardy Declaration demonstrates that the FBI conducted a search reasonably calculated to uncover documents responsive to the request for information contained in Monaghan's amended complaint. This search included a search of the FBI's central records system ("CRS"). (#34, Hardy Declaration, ¶ 23). The CRS contains records of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. *See id.* at ¶ 16. The FBI routinely searches the CRS for documents responsive to FOIA requests. *See id.* The mechanism used for searching the CRS is the automated case support system ("ACS"), which is an internal computerized subsystem of the CRS containing

1  searchable data from more than 105 million records. *See id.* at ¶¶ 16–17. In response to the
2  requested contained in Monaghan's amended complaint, RIDS conducted a search of the CRS using
3  the following subjects: "Airline Debris,""Debris Identification," "Commercial Aircraft," "Aircraft
4  Identification," "Aircraft Debris," "Aircraft Wreckage," "Aircraft," "Recovered Debris," "National
5  Transportation and Safety Bureau," "National Transportation Safety Board," "NTSB," "American
6  Airlines," "American Airlines Flight," "American Airlines Flight Eleven," "American Airlines Flight
7  Number 11," "American Airlines Flight 77," "N334AA," "N612UA," "N644AA," "N591UA,"
8  "Flight 175," "Flight 11," "Flight 77," "Flight 93," "Identifying Aircraft Parts," "Factual Report
9  Aviation," "Federal Aviation Administration, "Pentbomb," "Ground Zero," "Freshkills Landfill,"
10 and "Fress Kills Landfill." *See id.* at ¶ 23.

11  In addition to the search of the CRS, RIDS's search also included verification by the
12 responsible FBIHQ operational division that the identities of the four aircrafts hijacked on September
13 11, 2001 have never been in question by the FBI, the National Transportation Safety Board
14 ("NTSB"), or the Federal Aviation Administration. *See id.* at ¶ 24. Despite an extensive search,
15 RIDS located no FBI records responsive to Monaghan's request for information "revealing the
16 process by which wreckage recovered by defendant, from the aircraft used during the terrorist attacks
17 of September 11, 2001, was positively identified by defendant (with the aid of the National
18 Transportation Safety Board), as belonging to the said aircraft . . . ." (#15, ¶ 1).
19 Hardy's declaration is "reasonably detailed," and "nonconclusory;" there is no evidence it was
20 submitted in bad faith, and it demonstrates that the FBI conducted a search "reasonably calculated
21 to uncover all relevant documents." *See Zemansky*, 767 F.2d at 571. The declaration thus suffices,
22 as a matter of law, to establish that the FBI conducted a reasonable search and that the search
23 produced no responsive documents. *See Citizens Comm'n on Human Rights v. Food and Drug*
24 *Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995) (holding declaration demonstrated adequate search,
25 where declaration described agency's search for responsive records at main office and forwarding

1  of request "to seven of its divisional offices"; affirming grant of summary judgment in favor of
2  agency).

3        The FBI's conclusion parallels that rendered by the NTSB.  On July 18, 2008, in response
4  to a similar inquiry made by Monaghan to the NTSB, the NTSB stated that "the NTSB doesn't have
5  any records regarding" the request for "copies of records revealing the process by which wreckage
6  recovered from the aircraft used during the terrorist attacks of September 11, 2001, was positively
7  identified as belonging to: American Airlines flight 11 (N334AA), United Airlines flight 175
8  (N612UA), American Airlines flight 77 (N644AA) and United Airlines flight 93 (N591UA)." (#36,
9  Ex. E).  In response to and in denial of Monaghan's appeal of the NTSB decision, the NTSB
10  concluded that NTSB had "performed an adequate, reasonable search for any records within the
11  scope of [the] request . . . and did not locate any records within the scope of [Monaghan's] request."
12  (#36, Ex. F).

13        Monaghan has failed to controvert the FBI's showing that the FBI conducted a reasonable
14  search and failed to yield any responsive documents.  In *Marks v. U.S. (Dept. of Justice)*,
15  578 F.2d 261 (9th Cir. 1978), Alan R. Marks, pursuant to FOIA, requested from the Washington,
16  D.C. office of the FBI all files and documents maintained under his name.  *See id.* at 262.  The FBI
17  conducted a similar search as it has done in the present case, including searching the CRS, but found
18  no documents relating to Mr. Marks's name.  Unwilling to believe that full disclosure had been
19  made, Mr. Marks, acting pro se, sued the Department of Justice, seeking release of documents
20  allegedly undisclosed by the FBI.  *See id.*  The Department of Justice moved for summary judgment,
21  supported by sworn affidavits from record custodians in the FBI's Washington, D.C. and San
22  Francisco offices, stating that Mr. Marks had received all documents uncovered in response to his
23  request.  *See id.*  The district court, concluding that Mr. Marks was relying on "the sheerest
24  speculation," granted the motion for summary judgment.  *See id.*

25

1    The Ninth Circuit affirmed the district court's decision. The Ninth Circuit noted that "once
2 the Department established through sworn affidavits that no undisclosed documents regarding Marks
3 were contained in its relevant files, Marks was obligated to controvert that showing." *Id*. at 263.
4 Although Marks contended that the relevant documents must have been destroyed or removed, the
5 Ninth Circuit concluded that such conclusory allegations could not create a genuine issue for trial.
6 *See id. See also, Stimac v. Barr*, 10 F.3d 808 (9th Cir. 1993) (affirming district court's grant of
7 summary judgment in favor of government agency in light of government agency's production of
8 affidavit concluding all responsive documents had been produced and the plaintiff's failure to cite
9 specific facts to controvert the government agency's position); *Reidt v. Department of Transp*., 951
10 F.2d 362 (9th Cir. 1991) (same).

11    Likewise, Monaghan has failed to produce any evidence or point to any facts that create a
12 genuine issue of material fact that the FBI failed to conduct a reasonable investigation or that the FBI
13 has withheld unexempt documents that are responsive to Monaghan's request. The fact that a
14 particular document was not found does not demonstrate the inadequacy of a search. *See Iturralde*
15 *v. Comptroller of the Currency*, 315 F.3d 311, 313 (D.C. Cir. 2003) (stating that "the adequacy of
16 a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of
17 the methods used to carry out the search."). Monaghans's bare assertions that such responsive
18 documents exist amounts to nothing more than "mere speculation that as yet uncovered documents
19 might exist," which is not enough to "undermine the determination that the agency conducted an
20 adequate search for the requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).

21    For the foregoing reasons, the Court must GRANT the FBI's Motion for Summary Judgment.
22 (#42).

23 **IV.   MONAGHAN'S MOTION FOR SUMMARY JUDGMENT**

24    Monaghan filed his own separate Motion for Summary Judgment. A party moving for
25 summary judgment that does not have the ultimate burden of persuasion at trial has the initial burden

1 of producing evidence negating an essential element of the nonmoving party's claims or showing
2 that the nonmoving party does not have enough evidence of an essential element to carry its ultimate
3 burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102
4 (9th Cir. 2000). If the moving party does not satisfy its initial burden, the non-moving party has no
5 obligation to produce anything and summary judgment must be denied. *See id.* Monaghan has failed
6 to produce any evidence to satisfy his initial burden as movant. Nonetheless, even if Monaghan had
7 produced sufficient evidence to carry his burden, for the reasons explained above, the FBI has clearly
8 created a genuine issue of material fact in response to Monaghan's summary judgment motion. On
9 either ground, the Court must DENY Monaghan's Motion for Summary Judgment. (#41).

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (#41) is **DENIED** and Defendant's Motion for Summary Judgment (#42) is **GRANTED**.

DATED: February 12, 2009

_____
Robert C. Jones
United States District Judge

(bb)